Bigger, J.
Upon tbe submission of this case on demurrer to the petition, I decided that it did not sufficiently appear from the petition itself that the requirement of the ordinance granting to the defendant the right to use the streets and alleys of the city, that it should pay annually to the city the sum of four thousand dollars was a revenue measure, to warrant the court in so holding, but that this could only be determined upon a full hearing of the case. Since that decision tbe case has been heard, a jury having been waived and the case tried to the court. The question, therefore, before the court for determination upon this submission is, does it appear that this requirement that the defendant pay the sum of four thousand dollars annually to the city was for revenue purposes, or a reasonable requirement for inspection purposes and to enable the city to safeguard the *294 public from the dangers incident to the business. It is the claim of the defendant that it appears both from the terms of the ordinance, which was made a part of the petition, and from the evidence offered upon the trial that this was a provision intended for revenue purposes only, and not for the purposes of inspection.
■After a careful consideration of the evidence in the case I can not escape the conclusion that this requirement was intended as a provision to provide for inspection on the part of the city. In the first .place, the provisions of the ordinance itself granting the defendant the right to use the streets and' alleys of the city for the purpose of laying its pipes is, it seems to me, while not conclusive upon this point, as I held on the demurrer, yet of great weight. The ordinance expressly provides that the privilege is granted upon the condition that the said Columbus Gas, Light & 'Coke Company, its successors or assigns, shall annually pay to the City of Columbus, for the benefit of the gas and light fund of said city, the sum of four thousand dollars. In the cases which have been cited by counsel in their briefs, in no case did it appear that there was an express provision in the contract that the payment should be for any other purpose than inspection, and apparently there was no question raised in any of them but that the reservation was for inspection purposes, the question being as to the reasonableness of the exaction.
The Supreme Court of the United States held, in the case of The Postal Telegraph Company v. Taylor, 192 U. S., 64, that courts are not to be deceived by the mere phraseology in which an ordinance may be couched, where it appears conclusively that it was passed for an unlawful purpose, and not for the one stated therein. That is, it was held that although the ordinance provided for a payment for a proper purpose, yet if it appeared from the evidence that it was in fact an imposition for revenue purposes it could not be upheld. But in the case at bar the contract itself expressly states the purpose to which the money is to. be devoted, to-wit, to the gas and light fund of the city. That is, it was a requirement that the defendant company should pay towards defraying the cost to the city of lighting *295 its public buildings and streets the sum of four thousand dollars per annum.
In the argument upon the demurrer it was contended by counsel for the city that this provision of the contract was not conclusive, and that it was not important whether it went into one fund or another, if in fact the sum paid was reasonably necessary to indemnify the city for the cost of the inspection in discharging this duty to safeguard the public from the dangers incident to the use of gas. I accepted this view of counsel for the city upon the demurrer and held that this alone would not be conclusive of the question. But the evidence in this case discloses that as a matter of fact the city has not provided by ordinance at any time since 1892 for the regulation or inspection of the gas companies, nor has any resolution or ordinance been passed appointing an inspector or fixing the compensation for his services. It is true Mr. Rose, the assistant city clerk, testified that it did not necessarily follow because no provision had been made by ordinance for the creation for such an office, that there had been no expense to the city on account of the inspection of the work of the defendant gas company, and 1 hat it would be necessary in order to determine that question to make an inspection of a vast amount of vouchers on file in the city departments which he had not made and to do which would require a very great deal of time and labor. But employes and officers of the defendant company who have been with the company for many years testified that they never knew of any inspection during the period since the passage of this ordinance granting to the defendant the use of the city streets and alleys, nor of any expense incurred by the city in any way, either for examinátion of gas made and furnished by the defendant company to its consumers or of its pipes. The position and opportunities .of these witnesses to know are such that had there been any such expenditure on the part of the city by reason of the conduct of the defendant’s business, it is inconceivable that they would not have had any knowledge of it.
It is true a copy of the ordinance passed by the city council on October 1, 1900, has been since the hearing, by agreement of *296 both sides, offered in evidence, which ordinance defines the duties of an officer denominated “inspector of plumbing and gas fitting,” and which it is agreed was repealed in October, 1903. This ordinance does not purport to create such an office, and whether or not such office was ever created, and if so whether there was ever any appointment made to fill it or any expense incurred by the city on account of such office does not appear. The duties of this officer, as defined by this ordinance were to inspect the new buildings or the buildings which were being repaired within the city limits, and to see that all plumbing and house drainage is done in accordance with law and the ordinances of the city, etc. lie is required to make such inspection on application of the owner or contractor of any building in course of construction or repair.
I observe first as to this that it does not appear that he has •any duties to perform with reference to the gas fitting in the house, but only as to the plumbing and drainage, and for this inspection, of course, the defendant company could not be charged.
But there is a further reason why, in my opinion, this is not an expenditure which, even if for the inspection of gas fitting could be charged against the defendant company, if it be conceded that the city has a right to require the defendant company to pay any sum annually for any purpose. It is true upon the demurrer I stated that, in my opinion, this -would be •a proper matter for consideration in determining what ainount the city might exact from the defendant, but I am not bound by the views there stated if upon further consideration I conclude they are unsound.
The city was authorized by statute to consent to the use of the streets and alleys by the defendants, and in my opinion its duty of supervision of the defendant extended no further than the grant and permission; that is to lay the pipes of the defendant company in the streets and alleys of the city. The plumbing and gas fitting in the houses of 'the citizens belongs not to the company, but to the owners of the houses. If they desire to purchase and use gas in lighting or heating their *297 houses, it is their duty to take proper precautions to provide safe gas-fitting in their houses. This is not the duty of the defendant company, and it can not be reasonably charged with ■the supervision and inspection of gas-fittings in the houses of its customers.
The law expressly authorizes municipal corporations to license dealers in powder and other explosives, and such reasonable sum may.be exacted as will provide inspection and regulation of the storage and transmission by such dealers of these dangerous substances. But clearly they could not be held responsible for the failure of their customers to provide safe receptacles for it after it was delivered to them; nor could they be charged with inspection and supervision to insure such safe conduct on the part of their customers. No more can the defendant company be charged with the inspection and regulation of gas-fitting in the houses of their customers. The same may be said as to the statute which authorizes a municipal corporation to invest the fire engineer or other officer of the city with the duty of .being present at all fires and to investigate the causes thereof and provide compensation for such services.; This it seems to me is too remotely connected, if at all, with the privilege granted to the defendant company to be taken into consideration.
I also called attention to Section 2484 of the Revised Statutes in deciding the demurrer and expressed the opinion that the expense of such inspection of meters and gas would be a proper consideration in determining what amount should be required to be paid by the defendant. But upon further consideration I do not see any reason for saying that this may be charged to the defendant. There is no statutory provision authorizing it to be charged to the defendant. The city is not required to have such an officer and the evidence satisfies me it never has had such an officer. The fact that the city has never appointed such an officer is strong proof that it is not regarded as necessary by the city, as the creation of new offices by municipal corporations rarely falls short of the actual necessities of the case.
It is contended by counsel representing the city that evidence as to what the city has actually done in the way of providing *298 for inspection or regulation of the defendant is not competent, and that even if it appeared that it has not applied the money-exacted of the defendant to the proper purpose that this is no defense for the defendant. This is undoubtedly true. If this stipulation for an annual payment to the city was one properly made for a proper purpose, the city being authorized to make such an exaction, the fact that the city may not have made the proper use of it would not have been a defense, as the city might be compelled to make the proper use of the money. But the question before the court for determination is, was this regulation for payment one made for revenue purposes and therefore void, or was it such a stipulation for payment as the city might properly require to enable it to make proper inspection to safeguard the public from the dangers incident to the business. The ordinance itself certainly does not make it clear that it was for the latter purpose. Indeed, if the terms of the ordinance itself are to be taken as conclusive, it is a provision for the payment by the defendant for revenue purposes only. But the city’s contention is that this is not conclusive and this may be conceded. Neither in my opinion is the fact that there may possibly be expenses incurred by the city in the way of inspection, etc., conclusive.
The construction, therefore, which the city itself has put upon the matter by its own conduct is most persuasive as to the object and purposes of the exaction, and looking to the construction ■put upon it by the city itself leads irresistibly to the conclusion that it was a provision purely for revenue, and therefore it is without authority of law and void. If this- be true, there can be no element of estoppel involved.
In deciding the demurrer I said, if it appeared- that this requirement was for a purpose for which the city might rightly require the defendant to pay if -authorized by statute, that even if there was defect of power in the municipal authorities, because of a want of such statutory authority, so long as the defendant continued to enjoy the grant it was estopped to question the right of the city to exact it. But if this requirement was for revenue purposes, then it was a tax pure and simple, and not *299 even the Legislature could authorize such a tax for the purpose of replenishing the city treasury. In such case there is not only a defect of power in the municipal authorities, bulr there is want of capacity to receive such power, and the principle that where there is only a defect of power a corporation, while continuing to enjoy the grant is estopped, does not apply. Equitable estoppel rests upon the principle that the party seeking to enforce the principle of estoppel has parted with something of value, and has been placed in a worse position than he would otherwise occupy by reason of the conduct which it is claimed gives rise to the estoppel. But as the city has no right in the streets which it could sell to the defendant, it parted with nothing of value, and there does not seem to be any principle of estoppel involved in such a case.
An instructive case on the principle of estoppel on account of stipulations in a grant of this sort, as against a corporation continuing to enjoy the grant, will be found in'the case of Macklin v. The Home Telephone Co. et al, 1 C. C.—N. S., 373, and affirmed by the Supreme Court in 70 O. S., page 507.
Although I expressed the view in deciding the demurrer that the city had the right to require the payment of such sum as would insure a proper inspection and cover the reasonable ex-pense to the city of taking proper precaution to guard against the clangers incident to the business, upon further and more extended consideration of the case upon this hearing, I am of opinion that such power has not beén reposed in municipal corporations. It is an established principle of law, applicable to the powers -of municipal corporations, that they posses only such powers as are expressly granted by statutes .and such as are essential to carry into effect the powers which are expressly granted,.and this does not mean such as are merely convenient, but such as are indispensable. There was no statute at the time when this ordinance was passed which expressly authorized a municipal corporation to require such payment from gas companies as a condition to the grant of the right to use the streets and alleys of the municipality. Is it necessarily implied in order to carry out the powers which are expressly granted and *300 indispensable thereto? I think not. The only express grant of power to municipalities by statute to regulate gas companies is found in Section 3550 of the Revised Statutes. This section provides that—
“A company organized for the purpose of supplying gas for lighting the streets and public and private buildings of a city, village, town or township, may manufacture, sell and furnish the gas required therein for such or other purposes, * * * and such companies may lay conductors for conducting gas through the streets, etc., with the consent of the municipal authorities of the city, village, or town, etc., and under such reasonable regulations as they may prescribe.”
As counsel for the defendant says, the principal purpose and object of this section is to authorize gas companies to manufacture and sell gas in municipalities and to lay their pipes in the streets and alleys with the consent of the city, under such reasonable regulations as the municipal authorities may prescribe, and that it only incidentally confers a power upon municipal corporations. It would seem that if the Legislature had intended to ■ confer such extensive power as was here attempted to be exercised by the city, that it would -have granted 'it in express terms. As Judge Spear says in Ravenna v. The Pennnsylvania Company, 45 O. S., page 123:
“Municipal corporations are capable of exercising police powers; but when the question is whether such an organization has authority to enact a particular ordinance, it must be shown ■that the power to do the particular thing in the way marked out has been given, either expressly or by clear implication.”
That it was not expressly given by any statutory enactment is clear; nor do I think it is clearly to be implied. The Legislature has not clothed municipal corporations with plenary police powers. This is manifest from the numerous special grants contained in the statutes, and in this connection I call attention to the fact that Section 3461, which authorizes telegraph ■ companies to construct their lines upon the streets of a municipality, expressly provided that nothing contained in it should be so construed as to •authorize any municipal corporation to demand *301 or receive any compensation for the use of a street, alley or public way beyond what may be necessary to restore the pavement to its former state of usefulness. The business -of constructing and maintaining telegraph lines in the streets of a municipality does not seem to differ materially from the business of constructing and maintaining gas mains and pipes in such streets. Nor do I perceive in what respect the one is more dangerous than the other. In either ease it is necessary to make excavations in the streets which necessitates the repair of the pavements. One of the principal dangers in either case undoubtedly arises from the excavation itself before it is filled, or after it has been filled from the settling of the earth resulting in uneven places in the pavement and consequent danger to persons using the street.
It-appears from the evidence in this ease that, artificial gas in a main is practically without danger to the public. Unlike natural gas it is conveyed at a low pressure and the presence of such mains in the streets- is no more dangerous, and indeed less dangerous than the presence of telegraph lines, practically the only danger from the use of gas being from the -negligence of the users in permitting it -to escape in their dwelling-houses. Yet the Legislature by the enactment of this statute, which was passed- shortly prior to Section 3550, which alone confers -any power upon municipalities to regulate gas companies, Instead of recognizing any right in municipalities in the exercise of police- power to exact money from telegraph companies for the use of the streets, provides expressly that -only a sum sufficient to restore pavements to their former condition could be exacted.
In the light of this fact, and in the absence of express grant of power to require such payment of gas companies, is there any ground to hold that such power with reference to the use of streets by gas companies is necessarily implied? This provision of Section 3461 was but a recognition of the general legal doctrine that municipal corporations have no proprietary rights in the streets which they can sell. Is it reasonable to suppose that shortly after the enactment of Section 3461, and with reference to the use of the streets which is not, as it appears to me, different in any essential element from that of their use by *302 telegraph lines, that such a power not expressly conferred- is necessarily to be applied from the provision with reference- to regulation in connection with the laying of pipes in the streets and alleys? The provision of Section 3461, that that section shall not be construed to grant such a right in itself negatives the idea that there is any s-uch general right of police regulation in municipal authorities, else- where the necessity to guard against a construction of _ that special statute which would confer it? Such a construction would be harmless if that power already existed in municipal authorities. It is hardly to be presumed that the Legislature shortly after the enactment of Section 3461, and with reference- to a similar use of the streets by another class of corporations, should leave to implication a right to- the general and unrestricted exercise of such a power.
Again, the ordinance in question here in terms requires- in addition to the -payment of four thousand dollars per anmim numerous regulations as to the use which the defendant might make of the streets, and in my opinion this is the extent of the city’s rights to impose conditions under the- provisions of Section 35-50. The ordinance expressly stipulates that the defendant company should re-lay and replace all pavements disturbed by it within fifteen d'ays, in as good condition as- before the excavation was made, and to save and keep the city free and harmless from -all damages and expenses that may happen to any person by reason of anything done by the- company. The evidence shows that whenever the city found it necessary to make- repairs to pavements which have been broken by the defendant company, it presented its bill to the- company which was promptly p-aid. Aside, therefore, from the four thousand dollars required to be paid annually by the defendant, the ordinance expressly requires the defendant to do what the Legislature had shortly before declared was the limit of the city’s right with reference to telegraph companies using its streets, -and I have reached the conclusion that under the terms of Section 3550 this was the extent of the'city’s right to regulation of the use of the city’s streets by the defendant, and that it had no power to require an annual payment of any sum of money for the benefit of the gas and light fund of the city.
J. M. Butler, for plaintiff.
E. L. HeWitt, for defendant.
In my opinion the conclusions here announced are supported by the decision of the Supreme Court in the case of Ravenna v. Pennsylvania Company, 45 O. S., 118; Macklin v. The Home Telephone Company et al, decided by the Circuit Court of Hocking County, 1 C. C.—N. S., page 373, and affirmed by the Supreme court of Ohio, 70 O. S., page 507, under the caption of The City of Findlay v. The Home Telephone Company.
My conclusion is, therefore, that the city is not entitled to recover anything of the defendant by reason of this provision in the ordinance, and the finding and judgment are in favor of the defendant.
I will note an exception by the plaintiff.